# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL ELECTION COMMISSION, <br><br> Defendant. | Civ. No. 16-121 (BAH) <br><br><br> REPLY IN SUPPORT OF MOTION TO DISMISS |

## DEFENDANT FEDERAL ELECTION COMMISSION'S
## REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

October 26, 2017

Kevin P. Hancock
Acting Assistant General Counsel
khancock@fec.gov

Jacob S. Siler (D.C. Bar. No. 1003383)
Attorney
jsiler@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, DC 20463
(202) 694-1650

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I. THE LNC'S CHALLENGE TO THE SEGREGATED ACCOUNT LIMITS
IS FORECLOSED BY SUPREME COURT PRECEDENT .......................................2

    A. The LNC's Claim That the Segregated Account Limits Are
Expenditure Limits Subject To Strict Scrutiny Is Wholly
Foreclosed by Supreme Court Precedent ............................................................2

    B. The Segregated Account Limits Easily Survive
Closely Drawn Scrutiny ......................................................................................8

II. THE LNC HAS FAILED TO PROVIDE ANY BASIS TO SEPARATE
ITS CURRENT AS-APPLIED CHALLENGE FROM THE ONE IT
LOST IN *LNC I* ........................................................................................................11

III. THE LNC'S PROPOSED QUESTIONS TWO AND THREE ARE
OVERBROAD AND SHOULD BE AMENDED .....................................................13

CONCLUSION ....................................................................................................................16

# TABLE OF AUTHORITIES

*Cases*                                                                                        *Page*

\**Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................... 2-3, 6, 10

*Citizens United v. FEC*, 558 U.S 310 (2010) .................................................................. 3, 14

*EMILY's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009) ................................................................ 8

*FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431 (2001) ............................ 4, 5

*FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197 (1982) .................................................. 14

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) .................. 15

*Holmes v. FEC*, 823 F.3d 69 (D.C. Cir. 2016) ...................................................................... 1

*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) ....................... 1

*Libertarian National Committee, Inc. v. FEC*, No. 13-5094, 2014 WL 590973
    (D.C. Cir. Feb. 7, 2014) ................................................................................................ 1, 12

\**Libertarian National Committee, Inc. v. FEC*, 930 F. Supp. 2d 154
    (D.D.C. 2013) ........................................................................................................ 1, 12, 13

*Mandel v. Bradley*, 432 U.S. 173 (1977) ............................................................................. 7

\**McConnell v. FEC*, 540 U.S. 93 (2003) .................................................... 3, 4, 5, 6, 8, 9, 10, 14

*New York v. United States*, 505 U.S. 144 (1992) ................................................................. 15

*Randall v. Sorrell*, 548 U.S. 230 (2006) ............................................................................ 7, 9

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) .................................................................. 7

*Republican Nat'l Comm. v. FEC*, 698 F. Supp. 2d 150 (D.D.C. 2010) ........................... 6, 7, 11

*Republican Party of La. v. FEC*, 219 F. Supp. 3d 86 (D.D.C. 2016) ...................................... 7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................................. 1

*Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410 (2006) ........................................................... 12

*Statutes*

26 U.S.C. § 223(d)(1) ............................................................................................................ 8

52 U.S.C. § 30110 ............................................................................................................. 1, 2

52 U.S.C. § 30116(a)(1)(A) ...................................................................................................4

52 U.S.C. § 30116(a)(1)(B) ..................................................................................2, 4, 7, 13

52 U.S.C. § 30116(a)(1)(C) ...................................................................................................4

52 U.S.C. § 30116(a)(1)(D) ...................................................................................................4

52 U.S.C. § 30116(a)(9)..............................................................................................7, 8, 13

52 U.S.C. § 30125(b)(1) ........................................................................................................4

*Miscellaneous*

Brief of the Political Parties, *McConnell v. FEC* (and consolidated cases), Nos. 02-1727, 02-1733, 02-1753, 2003 WL 21911213 (U.S. filed July 8, 2003).......................................5

Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 82 Fed. Reg. 10904 (Feb. 16, 2017) .................................4

**INTRODUCTION**

This case presents no substantial federal question eligible to be certified to the *en banc* Court of Appeals under 52 U.S.C. § 30110, as defendant Federal Election Commission ("Commission or "FEC") explained in its initial memorandum. The Libertarian National Committee's ("LNC") facial challenge is wholly insubstantial because application of binding Supreme Court precedent obviously forecloses any claim that the segregated account or other party limits in the Federal Election Campaign Act ("FECA") are subject to strict scrutiny, and those contribution limits clearly meet the constitutional test the Supreme Court has established. (*See* FEC's Mem. in Supp. of Mot. to Dismiss and in Opp. to Pl.'s Mot. to Certify Facts and Questions ("FEC Mem.") at 12-24 (Docket No. 26).) The LNC also claims that FECA's national party committee contribution limits may not be constitutionally applied to the bequest of Joseph Shaber, but the LNC has provided no basis to distinguish that bequest from its generic as-applied claim about bequests that was found insubstantial in *Libertarian National Committee, Inc. v. FEC*, 930 F. Supp. 2d 154 (D.D.C. 2013) ("*LNC I*") and summarily affirmed by the D.C. Circuit, No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014). (*See* FEC Mem. at 24-33.) Because each of the LNC's claims here is completely foreclosed by binding precedent or is otherwise wholly insubstantial, this Court should not certify any question to the *en banc* Court of Appeals and should instead dismiss this case for lack of subject-matter jurisdiction. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 983-84 (D.C. Cir. 2017); *Holmes v. FEC*, 823 F.3d 69, 71 (D.C. Cir. 2016).

The LNC's opposition memorandum adds nothing new to this case, aside from rhetoric and red herrings. Although the fundraising flexibility Congress added by permitting national party committees to establish the segregated accounts at issue is recent, the LNC continues to

rehash the same arguments the Libertarian Party and its affiliated committees have made in major campaign finance cases for more than forty years. For instance, the LNC claims that FECA restrictions that clearly serve as contribution limits should be analyzed under strict scrutiny. And it asserts that limits applicable equally to all political party committees should be invalidated because they also apply to minor parties. But after forty years of Supreme Court cases rejecting these principles, the LNC's arguments are plainly untenable. This case should be dismissed.

## ARGUMENT

### I. THE LNC'S CHALLENGE TO THE SEGREGATED ACCOUNT LIMITS IS FORECLOSED BY SUPREME COURT PRECEDENT

#### A. The LNC's Claim That the Segregated Account Limits Are Expenditure Limits Subject to Strict Scrutiny Is Wholly Foreclosed by Supreme Court Precedent

The LNC's primary argument that its challenge to the national party limits is eligible for certification under 52 U.S.C. § 30110 is that the segregated account provisions, which expressly limit the amount of "contributions" each person may make to the LNC, 52 U.S.C. § 30116(a)(1)(B), are actually content-based restrictions on the party's expenditures. (*See* LNC's Mem. in Opp. to Def.'s Mot. to Dismiss and in Reply to Def.'s Opp. to Pl.'s Mot to Certify Facts and Questions ("LNC Opp.") at 6-7 (Docket No. 27).) Nothing in the LNC's Opposition, however, suggests that the segregated account limits are any more than they purport to be: limits on the amount that a person may contribute to the national committee of a political party.

The Supreme Court has repeatedly explained the difference between a contribution limit and an expenditure limit. In *Buckley v. Valeo*, the Court stated that expenditure limits are spending restrictions that "necessarily reduce[] the quantity of expression," "restrict[] the number

2

of issues discussed, the depth of their exploration, [or] the size of the audience reached." 424 U.S. 1, 19 (1976) (per curiam). For example, *Buckley* struck down as an expenditure limit a FECA provision that had set a $1,000 limit on how much any person could spend "relative to a clearly identified candidate." *Id*. at 39-51. By contrast, in *McConnell v. FEC* the Court noted that a statutory provision prohibiting national parties from receiving or spending nonfederal money was not a restriction on expenditures because it did not "in any way limit[] the total amount of money parties can spend." 540 U.S. 93, 139 (2003), *overruled in part on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010). That same reasoning directly forecloses the LNC's argument that the party limits, now loosened through the addition of segregated accounts, are expenditure restrictions subject to strict scrutiny.

Nowhere in the LNC's opposition does it provide a plausible argument for how the segregated account limits meet the above standards to constitute expenditure limits. They do not. The segregated account limits do not limit the amount of money a national political party can spend, nor do they set limits on the issues such a party may discuss. In fact, the segregated account limits do the opposite. Through those limits, Congress identified certain categories of expenses for which national party committees could solicit and receive more in contributions than FECA would otherwise permit. As compared to the state of federal campaign finance law that existed prior to their enactment, the segregated account limits provide national political parties like the LNC with a greater opportunity to amass resources. In other words, "[l]ike the contribution limits" to which the Supreme Court has repeatedly applied closely drawn scrutiny, the segregated account limits "have only a marginal impact on the ability of contributors, candidates, officeholders, and parties to engage in effective political speech." *McConnell*, 540 U.S. at 138.

3

Nevertheless, the LNC insists that there is "simply no precedent that deals with" a restriction on contributions that applies differently depending on how the money is used. (LNC Opp. at 6.) As the FEC explained in its initial brief, however, FECA's contribution limits have long passed constitutional muster despite the fact that some of those provisions apply different limits depending on the expenses for which contributed funds are used. (*See* FEC Mem. at 20-21.) Indeed, it is only since the enactment of the Bipartisan Campaign Reform Act ("BCRA") in 2002 that FECA's limits on the amount and source of contributions to national party committees have applied to all potential uses of contributed funds. (*Id.* at 21.) Yet the Supreme Court had upheld the constitutionality of the pre-BCRA limits on contributions to the national committees. *See FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 458 (2001). Current federal law, moreover, places different limits on the amounts that may be contributed to state and local political parties to be used for "Federal election activity" and those contributed to those entities for other uses. 52 U.S.C. § 30125(b)(1); *see also McConnell*, 540 U.S. at 173. Despite noting that BCRA prohibited "state party committees from spending" money raised outside FECA's source and amount requirements only to the extent they were spent on "federal election activities," the *McConnell* Court applied closely drawn scrutiny and ruled those contribution limits constitutional. *Id.* at 139, 173.

Additional examples abound. Currently, an individual may give $2,700 to any candidate committee for each election, $5,000 annually to any political action committee, and $10,000 annually to any state or local party committee. 52 U.S.C. § 30116(a)(1)(A)-(D); Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 82 Fed. Reg. 10904, 10905 (Feb. 16, 2017). From such an individual's perspective, those contribution limits apply "depending on how" the individual wishes to spend money, but

that does not convert the contribution limits into expenditure restrictions.  Similarly, although the Supreme Court has held that the amount political parties spend on independent expenditures may not be limited, the Court has upheld the constitutionality of FECA's limits on party expenditures that are coordinated with a candidate under closely drawn scrutiny, holding that those expenditures are the "functional equivalent of contributions."  *Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 447, 456.  Those limits restrict how parties may use funds raised through contributions, but again that does not make the limits subject to strict scrutiny.  *Id.* at 456.

The LNC has failed to respond to these arguments.  It argues that the "entire theory" underlying the *McConnell* decision is that "'large soft-money contributions to national parties are likely to create actual or apparent indebtedness on the part of federal officeholders, regardless of how those funds are ultimately used.'"  (LNC Opp. at 7 (quoting *McConnell*, 540 U.S. at 155).)  But that holding was merely a rejection of arguments by the plaintiffs there, including the LNC, that certain activities such as nonfederal ones *could not* be subject to federal contribution limits.  *McConnell*, 540 U.S. at 154-55.[1]  And the LNC does not explain how *that same opinion* could also uphold the contribution restrictions on state and local parties that apply *depending* on how those groups would use the contributed funds.  What reconciles those two holdings is entirely consistent with the FEC's theory of the case:  While *all* large contributions create a risk of actual or apparent corruption that does not mean that all such contributions do so to the precise same

---

[1]    Indeed, as part of that challenge the LNC represented to the Court that the importance of funding for its conventions and its lack of public funding for conventions provided reasons that the ban on acceptance of nonfederal funds by political parties needed to be struck down.  *See* Brief of the Political Parties, *McConnell v. FEC* (and consolidated cases), Nos. 02-1727, 02-1733, 02-1753, 2003 WL 21911213, *20-22, *64-69 (U.S. filed July 8, 2003).  Those positions are dissonant with its positions here that the segregated account activities are "largely useless (to the LNC)" and that Congress's consideration of the repeal of public funding does not constitute a valid consideration.  (Pl. LNC's Resps. to Def. FEC's Proposed Findings of Fact, at 13 (Docket No. 27-1).)

degree. (*See* FEC Mem. at 21-22.) Because such large contributions carry a range of corruptive potential or the appearance of such, courts have deferred to the Congressional determination of what level of risk is appropriate. *See McConnell*, 540 U.S. at 171 (relying on deference to congressional determination of need for prophylactic rules).

The LNC's argument, moreover, proves far too much. If the LNC is correct and the mere fact that any imposition on how contributed funds may be used subjects a campaign finance regulation to strict scrutiny, then *all* contribution limits would be subject to strict scrutiny. "[E]very limit on contributions" in a sense restricts expenditures because it "logically reduces the total amount that the recipient of the contributions otherwise could spend." *Republican Nat'l Comm. v. FEC*, 698 F. Supp. 2d 150, 156 (D.D.C.) ("*RNC*") (three-judge court), *aff'd*, 561 U.S. 1040 (2010). But that "truism does not mean limits on contributions are simultaneously considered limits on expenditures that therefore receive strict scrutiny." *Id.* Instead, campaign finance restrictions trigger strict scrutiny only if they "reduce[] the quantity of expression." *Buckley*, 424 U.S. at 19. As explained above, the segregated account limits do no such thing.[2] The Supreme Court has rejected applying strict scrutiny to party limits not only in *Buckley*,

---

[2] The LNC suggests that the fact the FEC has not argued that the segregated account limits meet strict scrutiny implies that the FEC admits that the limits do not survive strict scrutiny. (LNC Opp. at 8.) Far from it. The FEC's motion was limited to establishing that the LNC is foreclosed from disputing that the segregated account limits are contribution limits that survive closely drawn scrutiny. Should this Court deny the FEC's motion and certify the case to the *en banc* Court of Appeals, the FEC reserves the right to additionally argue any issue that is best addressed to that Court — a right the LNC has also exercised. (*See Id.* at 11, 16.) The Commission out of an abundance of caution and to preserve its rights has submitted proposed facts for that eventuality, including facts demonstrating the risk of corruption from party contributions, and those facts are not necessary to deny plaintiff's motion for certification and grant the Commission's motion to dismiss. (*Contra* LNC Opp. at 1 (referencing the Commission's 38 exhibits).) Should the Court grant the LNC's motion, however, the LNC may not "reserve[] the right to object to the relevance of any fact proposed by the FEC." (Pl. LNC's Resps. to Def. FEC's Proposed Findings of Fact, at 1.) The LNC's opportunity to do so was in its response to the Commission's proposed facts and any objections it failed to make have been waived.

6

*Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (plurality), *Colorado Republican*, and *McConnell*, but also more recently in *RNC*, 698 F. Supp. 2d at 156, and in *Republican Party of Louisiana v. FEC*, 219 F. Supp. 3d 86, 94 (D.D.C. 2016) (three-judge court), *aff'd*, 137 S. Ct. 2178 (2017), two cases that were affirmed summarily rather than on plenary briefing precisely because the principles had been so well established by prior opinions of the Supreme Court. *Mandel v. Bradley,* 432 U.S. 173, 176 (1977) ("Summary actions . . . should . . . be understood as . . . applying principles established by prior decisions . . . ."). The LNC's latest attempt at obtaining strict scrutiny is obviously frivolous.

The LNC repeatedly asserts that the segregated account limits are "content-based" (*see, e.g.*, LNC Opp. at 6), but nowhere does the LNC explain how those limits draw distinctions based on the content of any message the LNC wishes to convey. A regulation is content based if it draws distinctions "based on the message the speaker conveys." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). Under the segregated account limits, however, the ability of a national political party committee to use funds contributed to the segregated accounts depends not on the content of any message but rather the category of expenses at issue. *See* 52 U.S.C. § 30116(a)(1)(B) & (9). Thus, the LNC is free to use those funds to inform its members "the time and place a book club will discuss John Locke's Two Treatises of Government" or to "vote for one of Locke's followers in an upcoming election" or to express "an ideological view rooted in Locke's theory of government," so long as it does so at its presidential nominating convention. *Reed*, 135 S. Ct. at 2227. Unlike the sign code at issue in *Reed*, which drew distinctions based on the message conveyed by a sign, determining the applicability of the segregated account limits is more akin to determining whether the item at issue is a sign at all, regardless of what the sign says. *See id.* The segregated account limits are no more content-based restrictions than

7

limits on contributions to a health savings account are. *See* 26 U.S.C. § 223(d)(1) (defining a health savings account, contributions to which are subject to favored tax treatment, as a "trust . . . exclusively for the purpose of paying the qualified medical expenses of the account beneficiary"). Despite the LNC's unsupported assertion, moreover, the FEC has never "admitted" that the segregated account limits are "content-based restrictions." (LNC Opp. at 13.)

The only argument the LNC provides to support its claim that the segregated account limits are content based is that they *must* be, or else "[w]hat, exactly, is the function of this segregation." (LNC Opp. at 8.) The purpose of requiring segregation of funds contributed in accord with the segregated account limits, however, is obvious. That segregation is necessary to ensure that national party committees actually spend the money on the categories of expenses identified in 52 U.S.C. § 30116(a)(9). But that does not make the limits "content based" any more than FECA's requirement that state and local parties spend only money subject to its limits on federal election activity, *see McConnell*, 540 U.S. at 173, or the D.C. Circuit's requirement that committees that both receive contributions to be used for direct candidate contributions and contributions above FECA's otherwise applicable limits to be used for independent expenditures do so from separate accounts, *EMILY's List v. FEC*, 581 F.3d 1, 12 (D.C. Cir. 2009).[3]

### B. The Segregated Account Limits Easily Survive Closely Drawn Scrutiny

FECA's segregated account limits meet the applicable standard of review. Under closely drawn scrutiny, a campaign finance restriction is constitutional if it is closely drawn to match a sufficiently important interest. *E.g.*, *McConnell*, 540 U.S. at 136. As the LNC implicitly concedes (LNC Opp. at 6), the Supreme Court upheld the pre-2014 limits on contributions to

---

[3]   The LNC's other hypotheticals are similarly off-point. (*See* LNC Opp. at 13.) The segregated account limits do not dictate what a national party committee must speak about in connection with the expenses and are nothing like a noise ordinance that requires speakers to discuss the city council.

8

national party committees on the ground that they were closely drawn to the "Government's strong interests in preventing corruption, and in particular the appearance of corruption." *McConnell*, 540 U.S. at 156. In applying this level of scrutiny, the Court showed "proper deference to Congress' ability to weigh competing constitutional interests in an area in which it enjoys particular expertise." *Id.* at 137. Indeed, the Supreme Court has recognized that "legislators have 'particular expertise' in matters related to the costs and nature of running for office." *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (plurality) (quoting *McConnell*, 540 U.S. at 137).

Congress exercised its particular expertise in adopting the segregated account limits to ensure that national party committees had access to sufficient resources after a change in the law eliminated the availability of public financing for presidential nominating conventions. (*See* FEC Mem. at 19-20.) Through that amendment, Congress appropriately balanced the parties' need to obtain additional contributions after the termination of public convention funding with the anticorruption interests served by the general limit on contributions. (*Id.*)

In response, the LNC argues that even when applying closely drawn scrutiny, the Supreme Court has invalidated certain contribution limits. (LNC Opp. at 9 (citing *Randall*, 548 U.S. at 247-48).) In *Randall*, the Court did invalidate a base (non-aggregate) contribution limit that applied identically to all candidates and parties, but it did so because the "substantial restrictions" imposed by a state's contribution limits meant that they were "too low and too strict to survive First Amendment scrutiny." *Randall*, 548 U.S. at 247-48, 253. *Randall* is thus entirely consistent with the FEC's argument here, where Congress has actually *expanded* the pool of funds potentially available to national parties. Through the segregated account limits, Congress met its duty to ensure that political parties and candidates have an opportunity to amass

9

sufficient funds to engage in effective campaign advocacy while pursuing the government's important interest in protecting against the actuality or appearance of corruption. *See McConnell*, 540 U.S. at 142.

The rest of the LNC's arguments regarding closely drawn scrutiny focus on the fact that its needs differ from those of the major parties. (*See, e.g.*, LNC Opp. at 11 (arguing that the "rules favor fundraising" for "incumbent parties" and that "the playing field is tilted" against minor parties).) But the Supreme Court has repeatedly rejected this argument when Libertarian Party committees like the LNC have made it in the past. *See, e.g.*, *McConnell*, 540 U.S. at 159 (rejecting the argument that the soft-money ban was facially invalid because it violated the rights of "minor parties such as the Libertarian National Committee, which, owing to their slim prospects for electoral success and the fact that they receive few large soft-money contributions from corporate sources, pose no threat of corruption comparable to that posed by the RNC and DNC"); *Buckley*, 424 U.S. at 33-35 (rejecting "charge of discrimination against minor-party and independent candidates" because FECA "on its face treats all candidates equally with regard to contribution limitations").[4]

The LNC similarly notes that it "may prefer an unrestricted $10,000 gift to a $100,000 gift that can only be used on recounts and legal proceedings," while other national party committees "would choose differently" (LNC Opp. at 12), but that is precisely the point. Compared to the state of campaign finance law before the 2014 amendments, the segregated account limits give national party committees *more* flexibility to decide how to structure their finances and accept contributions that further their goals, consistent with Congress's

---

[4] Contrary to the LNC's claim (LNC Opp. at 13), there is no indication in the record that the segregated account limits were enacted to harm minor parties. Rather, the legislative history shows that the primary intent behind the adoption of the segregated account limits was to permit *all* political parties to amass additional resources. (*See* FEC Mem. at 19-20.)

10

determination on how the limits should apply. The LNC fails to explain how these additional options render a previously constitutional campaign finance regime constitutionally suspect. Even if the LNC elects not to raise money through the segregated account limits, it has the same ability to raise funds for its general account as it did in the past, as well as more potential sources of contributions available for certain types of expenses. And the Supreme Court has "squarely held that the level of scrutiny for regulations of contributions to candidates and parties does not turn on how the candidate or party chooses to spend the money or to structure its finances." *RNC*, 698 F. Supp. 2d at 156.

In sum, the LNC has failed to establish any substantial issue as to whether the segregated account limits are closely drawn.

## II. THE LNC HAS FAILED TO PROVIDE ANY BASIS TO SEPARATE ITS CURRENT AS-APPLIED CHALLENGE FROM THE ONE IT LOST IN *LNC I*

The LNC continues to rely exclusively on the *LNC I* decision to establish that its proposed certified questions relating to the Shaber bequest are eligible for certification (LNC Opp. at 14-17), but the LNC makes no effort to explain why the Shaber bequest is categorically different from any other bequest it might receive. (*Id.*) As the FEC explained in its initial brief, the *LNC I* decision does not require this Court to certify the LNC's proposed questions here. (FEC Mem. at 30-32.) Rather than respond to those arguments, the LNC largely ignores them.

The LNC's briefing tries to have it both ways. The LNC concedes that "were it to someday lose a substantially similar case, that loss would preclude similar cases," but the LNC fails to explain why its bequest claims here are not "substantially similar" to the broad claim it lost in the D.C. Circuit in *LNC I*. (*See* LNC Opp. at 15.) After all, if no feature of the Shaber bequest differentiates it from any other bequest the LNC might receive, then the LNC has not truly accepted "the reality of what has already been won and lost" as it claims. (*Id*. at 14.) In

11

addition, while the LNC attempts to minimize the contributions Shaber made to the LNC during his life (*id*. at 16), those contacts are far more extensive than those that were before the *LNC I* district court when it certified the LNC's challenge as to the Burrington bequest at issue there (FEC Mem. at 31).  The LNC similarly fails to respond to the FEC's argument that the other actual and potential bequests the LNC identifies in its factual submission — which the LNC apparently would like to be implicated by a ruling in its favor on the Shaber bequest — also bear little similarity to the earlier Burrington request.  (*Id*. at 31-32.)  If all those other bequests would be permissible under the claims the LNC advances here, then there is no question that the LNC's specific claims here are really an attack on the conclusion of *LNC I* that contribution limits may constitutionally be applied to bequests as a general matter.  The Court of Appeals summarily upheld the district court's judgment on that question, finding "[t]he merits of the parties' positions . . . so clear as to warrant summary action." 2014 WL 590973, at *1.  Yet the LNC does nothing to distinguish its current claims.

      Finally, the LNC notes that when the Supreme Court decides a facial challenge, it does not necessarily "'purport to resolve future as-applied challenges.'"  (LNC Opp. at 17 (quoting *Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410, 411-12 (2006) (per curiam).)  But the broader claim rejected in *LNC I* was, itself, an as-applied claim.  The LNC's claim there was not that the contribution limits applicable to national party committees were invalid on their face in the sense that the entire contribution limit must be struck down.  Indeed, the *LNC I* court explained that the LNC was foreclosed from bringing "a facial challenge regarding contribution limits." *LNC I*, 930 F. Supp. 2d at 165.  Rather, the LNC argued only that contribution limits could not be applied to bequeathed contributions. *Id.* at 155-56 ("The LNC . . . challenges the constitutionality of [FECA] *as applied to bequests*." (emphasis added)).)  The broader as-applied

claim it asserted and lost in the D.C. Circuit in that case — that *all* bequests must be constitutionally exempt from contribution limits — encompasses the claims the LNC wishes to assert in this litigation and *a fortiori* forecloses them, unless there is some material basis for distinguishing the Shaber bequest from bequests in general. The LNC, however, fails to make any such distinction. Its proposed questions are therefore insubstantial.

### III. THE LNC'S PROPOSED QUESTIONS TWO AND THREE ARE OVERBROAD AND SHOULD BE AMENDED

The LNC's proposed questions two and three are argumentative and inappropriate for certification because they (1) are leading in that they suggest the segregated account limits are in fact restrictions on the expressive "purposes for which the [LNC] may spend its money" (Pl.'s Mot. to Certify Facts and Questions at 1 (Docket No. 24).); and (2) draw into question aspects of the limits on contributions to national party committees, such as the ban on soft-money contributions, which even the LNC does not argue are unconstitutional in the context of this case (LNC Opp. at 6-7 (citing *McConnell* and conceding that the soft-money ban was upheld in that case)).

The LNC's proposed questions two and three are overbroad. The only alleged constitutional defect the LNC has ever identified in this part of its challenge is rooted in its view of the portions of 52 U.S.C. § 30116(a)(1)(B) and (9) that establish the segregated account limits. Yet the LNC's proposed questions go far beyond that and implicate whether national party committees may be subject to contribution limits *at all*. As in *LNC I*, the LNC's proposed questions raise issues that have been wholly foreclosed by Supreme Court precedent, and if any question is to be certified, it should be limited to the portion of the statute LNC claims is unconstitutional. *See LNC I*, 930 F. Supp. 2d at 166.

In response to the FEC's proposed amendments, the LNC claims that it is "offensive to the LNC's values" for the FEC to explain what contributions national party committees are "permitted" to accept under the segregated account limits.  (LNC Opp. at 18.)  But one need look no further than the LNC's own papers to find a similar description of the statutory scheme at issue here.  (*See, e.g.*, *id*. at 6 (describing the limits FECA imposes on the "money political parties *may raise*" (emphasis added).)

The LNC's position appears to be rooted in the notion that the Court must look at FECA as it stands now in a vacuum, without any consideration of how the statute developed or was amended.  (*See* LNC Opp. at 13.)  But the LNC provides no support for its argument that the Court must take such a myopic view.  That is not how the Supreme Court decided *McConnell* or *Citizens United v. FEC*, both of which exhaustively considered the history of relevant campaign finance restrictions.  *See Citizens United v. FEC*, 558 U.S. 310, 342-48 (2010); *McConnell*, 540 U.S. at 115-122 (discussing the "steady improvement of the national election laws").  In addition, the Supreme Court has routinely pointed to Congressional "refinement" of campaign finance restrictions representing a "careful legislative adjustment of the federal election laws, in a cautious advance, step by step," as a basis for affording Congress "considerable deference" over those provisions.  *FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197, 209 (1982) (internal quotation marks omitted).

Ignoring the statutory history is particularly inappropriate here, where Congress amended the contribution limits at issue after eliminating one source of potential funds available to national party committees.  (*See* FEC Mem. at 19-20.)  As explained above and in the FEC's initial brief, the history of FECA's evolution is essential to understanding Congress's rationale for adopting the segregated account limits.  (*See supra*, p. 9; FEC Mem. at 18-20.)

The only other reason the LNC offers for why its challenge here is really broader than the segregated account limits on which the LNC has focused is that, according to the LNC, those limits are probably not severable. (LNC Opp. at 3-4.) To the extent remedies are relevant at this stage, however, this argument provides no help to the LNC. "[W]hen confronting a constitutional flaw in a statute," courts must "try to limit the solution to the problem" and sever "any problematic portions while leaving the remainder in tact." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (internal quotation marks omitted). "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *New York v. United States*, 505 U.S. 144, 186 (1992) (internal quotation marks omitted). Even assuming that the LNC might ultimately succeed in having the segregated account limits declared unconstitutional, these judicial principles establish the overbreadth of the LNC's proposal that *all* of FECA's limits against national party committees should be part of this case. Here there is no question that limits on contributions to national political party committees would be "fully operative as a law" absent the segregated account limits, as that is precisely how FECA operated for decades before the 2014 amendments. *See id.* Congressional intent in the absence of the segregated account limits is similarly apparent. If Congress had preferred national party committees to operate without limits, it would simply have repealed those limits.

The LNC's challenge is predicated on its view that FECA's segregated account limits violate its First Amendment rights. If any question is to be certified to the *en banc* Court of Appeals, it should accurately reflect the scope of that challenge.

## CONCLUSION

For the foregoing reasons, the Court should grant the FEC's motion to dismiss for lack of subject-matter jurisdiction.

Respectfully submitted,

| | |
|---|---|
| Lisa J. Stevenson (D.C. Bar No. 457628) | Kevin P. Hancock |
| Acting General Counsel | Acting Assistant General Counsel |
| lstevenson@fec.gov | khancock@fec.gov |
| | |
| Kevin Deeley | */s/ Jacob S. Siler* |
| Associate General Counsel | Jacob S. Siler (D.C. Bar. No. 1003383) |
| kdeeley@fec.gov | Attorney |
| | jsiler@fec.gov |
| Harry J. Summers | |
| Assistant General Counsel | COUNSEL FOR DEFENDANT |
| hsummers@fec.gov | FEDERAL ELECTION COMMISSION |
| | 999 E Street, N.W. |
| | Washington, DC 20463 |
| October 26, 2017 | (202) 694-1650 |